**Frances BOLTON, Plaintiff,**

**v.**

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 89–9016.**

United States District Court,
E.D. Pennsylvania.

March 12, 1992.

---

Eric J. Fischer, Fischer & Walkenhorst, Jenkintown, Pa., for Frances Bolton.

David F. McComb, U.S. Attorney's Office, James G. Sheehan, United States Attorney's Office, Philadelphia, Pa., for Louis Sullivan.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

In this action Plaintiff Frances Bolton contests the disposition by the Secretary of Health and Human Services (the "Secretary") of her application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), as well as the denial of Supplemental Security Income Benefits under Title IX of the Act. Since the Plaintiff has exhausted her administrative remedies, the Court is authorized under 42 U.S.C. § 405(g) to review the Secretary's decision.

This Court referred the parties' cross motions for summary judgment to United States Magistrate Judge Peter B. Scuderi for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge has filed a Report and Recommendation (# 17 in the docket, the "Report") and has recommended that the Court grant Defendant's motion for summary judgment. Plaintiff has filed objections to that report. As § 636(b)(1)(B) requires, we now make a de novo determination of those portions of the Report to which objection is made.

## BACKGROUND

Because the Magistrate's Report sets out the factual and procedural background of this claim extensively, there is no need for a detailed recital here. Plaintiff originally filed an application for disability benefits in January, 1987, alleging an onset date of April 10, 1986. Rec. at 169, 416.[1] The application was denied, initially and upon reconsideration, and two separate evidentiary hearings were held before an Administrative Law Judge. The Appeals Council, on its second review of the claim, finally approved Plaintiff's claim for Disability Insurance Benefits ("DIB"), fixing the onset date of her disability at April 22, 1988. At the same time, the Appeals Council decided that Plaintiff was not eligible for Supplemental Security Income ("SSI") benefits because she had not filed an application for such benefits. The Secretary adopted the decision of the Appeals Council as his final decision. Plaintiff then appealed to this court, and now contends that the Secretary should have awarded her both DIB and SSI benefits from April 10, 1986.

## DISCUSSION

The familiar summary judgment standard guides our disposition of these Secretary in this action.

---

1. "Rec." refers to the record of proceedings within the administrative agency, filed by the

motions. The court shall render summary judgment if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In this case of judicial review of a decision by the Social Security Administration, defendant Secretary's findings of fact "shall be conclusive" if supported by substantial evidence. 42 U.S.C. § 405(g). *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.1988); *Jones v. Sullivan*, 954 F.2d 125, 127–128 (3d Cir.1991).

The Third Circuit discussed the nature of the substantial evidence test at length in *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir.1986), *cert. denied*, 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 373 (1987). Quoting from a legal textbook, the Third Circuit adopted this explanation:

> Thus, the evidence must be sufficient to support the conclusion of a reasonable person after considering the evidentiary record as a whole, not just the evidence that is consistent with the agency's finding.

806 F.2d at 1190 (quoting R. Pierce, S. Shapiro & P. Verkuil, *Administrative Law & Process* 358–59 (1985)).

The Third Circuit described the substantial evidence standard of proof as "deferential" and granted "similar deference to agency inferences from facts if those inferences are supported by substantial evidence." *Monsour* at 1190–91. Even if the reviewing court would reach a different result on *de novo* review, Defendant Secretary's factual findings must stand if supported by substantial evidence. *Id.* at 1191. Mindful of the limited scope of our review, we turn to Plaintiff's objections to the Report.

In order to be eligible for Disability Insurance Benefits, a claimant must be unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). In this

case, the Secretary found that such a disability was present in Plaintiff, and that after April 22, 1988 Plaintiff had been unable to engage in any substantial gainful activity.

The Secretary's decision to set April 22, 1988 as the onset date of Plaintiff's disability was based on the report of Dr. Pedro Ferreira, the testimony of Dr. Sharon A. Wainwright, as well as the opinions of other medical and vocational experts, and on Plaintiff's own subjective testimony.[2] Dr. Ferreira administered a neuropsychological test to Plaintiff on April 23, 1988 and reported that Plaintiff demonstrated difficulties with visual and logical memory and attention span, as well as signs of incoordination. Rec. at 211, Testimony of Dr. Sharon A. Wainwright.

Plaintiff objects primarily to the way in which the Magistrate Judge's Report interprets Dr. Wainwright's testimony interpreting Dr. Ferreira's test results. The Report summarized the testimony of Dr. Wainwright, the non-examining medical advisor to the Administrative Law Judge at both evidentiary hearings, as essentially stating that prior to April 22, 1988, Plaintiff was only slightly impaired. Plaintiff objects that, in fact, Dr. Wainwright testified that Plaintiff had an organic brain disorder which had probably existed long before April 10, 1986. Rec. at 212.

We agree with the Magistrate Judge that Dr. Wainwright believed that Plaintiff was only slightly impaired, and we do not perceive any conflict between that diagnosis and the statement that her organic brain disorder probably existed before April, 1986. Dr. Wainwright testified that

> the extra definitive mark that it was an organic brain disorder that's also present, doesn't in any way change the functional outcome. So I would still put activities of daily living at slight (sic) and difficulties of maintaining social functioning as slight, difficulties—deficiencies of concentration I would put at vari-

---

**2.** Although the record of Plaintiff's claim demonstrates significant physical problems, Plaintiff's objections focus solely on her psychological difficulties, and thus we do not discuss the physical problems in this opinion.

able. It seems to range anywhere from seldom to frequent.

Rec. at 213–14. She also changed her previous assessment of "ability to maintain attention and concentration for extended periods" from "not significantly limited" to "moderately limited." Rec. at 214–15. Dr. Wainwright did not testify about what, if any, functional impairments Plaintiff may have experienced prior to the April 1988 test, she merely looked at Dr. Ferreira's report and stated that as of the date of his test, Plaintiff demonstrated certain memory deficiencies and probably had an organic brain disorder. While she testified that the organic brain disorder probably had been present for some time, Dr. Wainwright did not state that the severity of functional impairment present on April 23, 1988 had been present since before April 10, 1986, as Plaintiff contends. The Secretary does not contend, as the Plaintiff argues he must, that Plaintiff's ailment struck like lightning on April 23, 1988. The ALJ, and later the Appeals Council, could rationally have found from the rest of the evidence that the memory problems had not always been as severe as they were in April of 1988, and in fact had slowly worsened, so that it was not until then that Plaintiff was unable to engage in substantial gainful activity.

The evidence supporting this inference includes Plaintiff's own testimony about the numerous activities she was able to do after April 10, 1986, such as caring for her children and grandchildren (Rec. at 89, 144), playing the piano at church services, anniversaries, concerts, and christenings (Rec. at 102–03), attending Saturday classes at Drexel University (Rec. at 109), and traveling to Drexel to use their personal computer facilities (Rec. at 201). She performed extensive volunteer services, such as helping at a Boys/Girls Club and at a club for the elderly and disabled (Rec. at 125–26) and serving on the Executive Committee and as hospitality chairperson at her Home and School Association. Rec. at 125.

■ In addition to subjective evidence, the Secretary considered the reports of Dr. John Edwards (Rec. at 495) and Dr. Jerry Murphy (Rec. at 462, 585), Plaintiff's treating physicians. Both physicians stated prior to April of 1988 that Plaintiff was able to work, Dr. Murphy limiting his assessment to part time sedentary work.[3] The Vocational Expert at the second evidentiary hearing, Beth Kelley, testified that, even giving full credit to all of Plaintiff's claimed physical and mental limitations, e.g. limited use of left hand, limited ability to concentrate and make decisions, Plaintiff could perform the unskilled job of cashier. The Vocational Expert stated that there were 20,000 unskilled cashier positions locally and 2,000,000 nationwide.

■ Based on this evidence, considered together with the rest of the voluminous record in this case, we find that the Secretary's decision to set the onset date at April 22, 1988 was supported by substantial evidence.

■ Plaintiff's final objection to the Report of the Magistrate Judge is that the Report incorrectly finds that substantial evidence supported the Appeals Council's decision that Plaintiff is ineligible for SSI benefits because she failed to file an application for such benefits. Filing an application is one of the eligibility requirements for SSI benefits. 20 C.F.R. § 416.305; *See also* 42 U.S.C. § 1383(c)(1)(A) ("The Secretary is directed to make findings of fact, and decisions as to the rights of any individual *applying for payment under this subchapter*") (emphasis supplied). An application is considered to be filed on the date it is received or postmarked, with the exception that an application may be backdated to the date of an oral or written inquiry about receiving benefits *if* a formal written application is filed within sixty (60) days of the notice the Department sends out telling the inquiring party of the need to fill out an application form. §§ 416.325, 416.340, 416.345. The Department will also backdate an SSI application to the date of

---

**3.** Part time work can constitute "substantial gainful activity." *Wright v. Sullivan,* 900 F.2d 675, 680 (3d Cir.1990).

application for DIB benefits, but only if the claimant files the written application form within sixty (60) days of the DIB application. Thus, Plaintiff would be eligible for SSI only if she had filed the proper application form.

█ Plaintiff contends that the record shows that she did, in fact, file an application, in that on her January 14, 1987 application for Disability Insurance Benefits, Plaintiff responded to the question: "Have you ... ever filed an application for Social Security benefits, a period of disability under Social Security, supplemental security income, or hospital insurance under Medicare?" with the answer "yes." On the next line of the application appear the words "SSI today," presumably in explanation of the "yes" response. At the first evidentiary hearing, however, the Administrative Law Judge (ALJ) found that the Department records contained no such SSI application. In response to a direct question from the ALJ, Plaintiff's attorney stated that he did not believe there was an SSI application. The attorney then asked Plaintiff if she had applied for supplemental security income, and Plaintiff testified "It was—they were supposed to fill out the—." After speaking to Plaintiff, the attorney then said "My client is under the impression when she applied she was going to apply for both." Rec. at 84. Plaintiff produced no further evidence to support her contention that she filed an application. The ALJ decided to "escalate" the SSI issue even though he did not have an application, and found that the disability requirement for SSI was not met.[4] The Appeals Council decision adopted by the Secretary held that the claimant was not eligible for SSI benefits because she did not file an application. Rec. at 9.

The evidentiary record as a whole is sufficient to support the Secretary's decision that Plaintiff never actually filed an application. The response to the DIB question and Plaintiff's ambiguous testimony, taken with the ALJ's statement that the Department had not been able to locate any SSI application or file, reasonably support an inference that Plaintiff mistakenly thought she had applied for SSI when she had only applied for DIB. We note that Plaintiff's disability claim is partly premised on her memory deficiencies. It would not be unreasonable for the Secretary to give little weight to her attorney's argument (not sworn testimony) that it was Plaintiff's "impression" that she had applied for both DIB and SSI. The only contrary evidence is the answer Plaintiff gave on her DIB application that she was filing for "SSI today", which she was not able to confirm at the evidentiary hearing.

The Secretary's decision must stand. Plaintiff's motion for summary judgment is denied; Defendant's motion is granted.

---

**4.** The ALJ also noted for the record that Plaintiff did not appear to meet the income eligibility requirements for SSI benefits, and this might be why no application was ever filed. Rec. at 171. It is logical to infer from the circumstances and

Plaintiff's testimony that Plaintiff inquired about SSI, but when the income eligibility requirements were explained, she decided she was not eligible and did not complete an application.